**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Criminal No.: 05-264(ESH) |
| | : | |
| **ROBERT MUSCHETTE,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S OPPOSITION TO DEFENSE MOTIONS**
**TO SUPPRESS TANGIBLE EVIDENCE AND STATEMENTS**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits its opposition to defendant's Motions to Suppress Evidence and Statements. In support of this pleading, the government makes the following representations:

**STATEMENT OF FACTS**

On or about June 19, 2005, at approximately 4:51 p.m., members of the United States Capitol Police observed a black Lexus bearing a homemade altered Maryland temporary license tag in the rear window, traveling south bound in the 900 block of South Capitol Street, SW.[1] The vehicle was being driven by the defendant, Robert Muschette. Officer Chad Beckett of the United States Capitol Police conducted a traffic stop by use of his police emergency equipment, and the defendant complied. When officers approached his vehicle and requested his license and registration, the defendant told them that he had left his license in his hotel, but that he had a Maryland identification card. When the officer asked him about the ownership of the car, the defendant replied that it belonged to his wife. The officer then asked the defendant a question to the

---

[1] The bottom portion of the tag was missing, and had been replaced with a piece of cardboard that had handwritten letters and numbers on it.

effect of "what happened to your tag, that is obviously not a real tag." The defendant then got out of the vehicle and said words to the effect of "I was at a club one night, and someone got mad and ripped the tag in half, so I had to hand-draw the numbers on. The officer asked whether the defendant had been pulled over for the tag before, and the defendant replied that he had. A check of law enforcement databases revealed that the defendant had no Maryland permit, and an expired District of Columbia permit. The check also revealed that the defendant had an outstanding bench warrant issued by the District of Columbia Superior Court. Defendant was arrested, and placed into handcuffs. When the officer explained that the warrant was outstanding, the defendant replied that he had already taken care of it. The officer replied that they would look into it and take care of it when they got to the police station. While the defendant was being patted down incident to that arrest, officers recovered an empty holster and a pair of handcuffs from the defendant's waistband. The officer then asked the defendant who he worked for, and the defendant then told the officers that he owned a security company that did body guard work for hire, domestic violence cases, and fugitive recovery, as well as security for some of the clubs in town. The officer asked whether he carried a firearm while he worked at the clubs in DC, and the defendant replied yes. The officer then asked whether the defendant had a license for the firearm, and the defendant replied with words to the effect of "well no, not really." A search of the vehicle incident to arrest revealed a loaded Rossi .38 cal. revolver, wrapped in a towel and laying on the rear passenger floor board of the car underneath a leather folder with papers. The pistol was loaded with 5 rounds of Winchester ammunition, and it fit the holster found on the defendant's person. The search also revealed a box containing 42 Winchester .38 caliber bullets in the rear passenger door next to the revolver.

After waiving his Miranda rights, the defendant gave a statement to Detective Pendleton. The defendant stated that the gun the officers found was registered to his wife, and that he did not know it was in the car. He also stated that the holster was for a .357 that he kept at his mother's house in Forestville, and that he carried it when he was employed in his bodyguard business.

During the course of their investigation into the above-mentioned incident, it was learned that defendant had been in possession of a firearm on a previous occasion in the District of Columbia after having been convicted of a felony offense. Investigation revealed that on or about April of 2005, that the defendant had worn a Rossi .38 caliber revolver at the New Saint Paul Daycare, 2400 Franklin Street, NE Washington, DC, while picking up his son from the daycare. At that time, the defendant was told that not to come into a daycare with a gun in plain view. However, the defendant replied that he was a security guard and that the firearm was registered. There is no .38 caliber Rossi revolver registered to the defendant in the District of Columbia.

## ARGUMENT

**I. The gun in this case was lawfully obtained by the police during a search incident to a valid arrest, and therefore should not be suppressed.**

The police conducted a lawful traffic stop on the vehicle that the defendant was driving. The officers noticed that the vehicle had an illegally hand-altered temporary tag, which certainly gave them grounds to conduct a traffic stop as a result of this violation of the motor vehicle laws. See, e.g., Whren v. U.S, 116 S.Ct. 1769 (1996).

Once the defendant had been validly detained for the investigation of the traffic stop, the police had the discretion to order him out of the vehicle. See Pennsylvania v. Mimms, 98 S.Ct. 330

(1977). However, here, that wasn't necessary, because when the police inquired about the altered tag, the defendant got out of the car on his own to discuss the situation with the officer. During the course of the traffic stop for the altered tag, the officers were well within their bounds to check to confirm that the car was properly registered. Moreover, they were also within their bounds to request the defendant's driver's license, and upon discovery that he did not have a license on his person, were obligated to check to see whether he was properly licensed to drive. The combination of the altered tag and the invalid driver's license provided further support for the decision to run the defendant through the law enforcement data base.[2] Finally, the discovery of the open warrant provided probable cause for the officers to arrest the defendant, and in fact, obligated the officers to place the defendant under arrest pursuant to the dictates of the warrant. On those facts, the arrest of the defendant was certainly lawful.

Since the arrest of the defendant was lawful, the holster, the weapon and the ammunition were validly seized during the search pursuant to the arrest. If the police have probable cause for an arrest, they may make a full search of the arrestee and the area within the arrestee's immediate control at the time of the arrest. Chimel v. California, 395 U.S. 752, 763 (1969). Once an individual is subject to arrest, the officers are permitted to search the passenger compartment of the car (and any containers found therein) incident to that arrest. New York v. Belton, 453 U.S. 454 (1981). The evidence here was found pursuant to that lawful search, and should not be suppressed.

---

[2] The government does not intend to imply however, that the decision to check the defendant's warrant status was dependent on whether the defendant had a valid tag or driver's permit. The decision to check the defendant's warrant status was well within the officer's discretion whether he had the valid tags and license or not.

**II. The statements made by the defendant should not be suppressed, since they do not violation either the 4th amendment or <u>Miranda</u>.**[3]

>   1. The statements made by the defendant up until the point of his arrest were not the product of an illegal detention, or a custodial interrogation, and thus should not be suppressed.

During the investigatory stop as a result of the defendant's traffic violations, he had conversation with the officers about his altered tags, his driving permit status, and his occupation. These statements were not the product of an illegal detention, because the officers were well within their bounds to detain him during the investigation of the traffic violations. They were not the product of any custodial interrogation, because up until the discovery of the warrant, the defendant was not under arrest.

>   2. The statements made by the defendant to Detective Pendleton were made after a knowing and intelligent <u>Miranda</u> waiver.

The strictures of <u>Miranda</u> apply to statements which are the product of custodial interrogation. <u>See</u> <u>Calaway v. United States</u>, 408 A.2d 1220, 1224 (D.C. 1979). For purposes of <u>Miranda</u>, a suspect is in custody only if "the individual's freedom of movement is curtailed to the 'degree associated with formal arrest.'" <u>Patton v. United States</u>, 633 A.2d 800, 815-16 (D.C. 1993) (quoting <u>California v. Beheler</u>, 463 U.S. 1121, 1125 (1983) (per curiam) (internal quotation marks omitted)). A suspect in such a situation must be informed of his right to refuse to answer any statements; the failure to do so will lead to the suppression of any statements that suspect makes. <u>Dickerson v. United States</u>, 530 U.S. 428 (2000)

---

[3] <u>See</u> <u>United States v. Miranda</u>, 384 U.S. 436 (1966).

5

In this case, before speaking with the detective, the defendant was advised of his right to remain silent, , and he was warned against the risk of self-incrimination. He was also advised of his right to have an attorney whether he could afford it or not. He then signed a waiver of those rights, and indicated that he understood them. Under these facts, the statement that the defendant made to Detective Pendleton was obtained in a manner consistent with the requirements of <u>Miranda</u> and its progeny, and should not be suppressed.

WHEREFORE, for these reasons and any other reasons as may appear to the Court at a hearing on this matter, the government submits that the evidence and the statements in this case were lawfully obtained, and that consequently, the defendant's Motions to Suppress Evidence and Statements should be denied.

Respectfully submitted,

KENNETH L. WAINSTEIN.
UNITED STATES ATTORNEY


By: _____
 WANDA J. DIXON
Assistant United States Attorney
Organized Crime and Narcotics Trafficking Section
555 Fourth Street, N.W., Room 4235
Washington, D.C. 20530
202/514-6997