UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 05-264 (ESH) |
| | : | |
| v. | : | |
| | : | FILED |
| | : | |
| ROBERT MUSCHETTE | : | OCT 2 6 2005 |

**FACTUAL PROFFER**

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

On or about June 19, 2005, at approximately 4:51 p.m., members of the United States Capitol Police observed a black Lexus bearing a homemade altered Maryland temporary license tag in the rear window, traveling south bound in the 900 block of South Capitol Street, SW.[1] The vehicle was being driven by the defendant, Robert Muschette. Officer Chad Beckett of the United States Capitol Police conducted a traffic stop by use of his police emergency equipment, and the defendant complied. When officers approached his vehicle and requested his license and registration, the defendant told them that he had left his license in his hotel, but that he had a Maryland identification card. When the officer asked him about the ownership of the car, the defendant replied that it belonged to his wife. The officer then asked the defendant a question to the effect of "what happened to your tag, that is obviously not a real tag." The defendant then got out of the vehicle and said words to the effect of "I was at a club one night, and someone got mad and ripped the tag in half, so I had to hand-draw the numbers on. The officer asked whether the defendant had been pulled over for the tag before, and the defendant replied that he had. A check of law enforcement databases revealed that the defendant had no Maryland permit, and an expired District of Columbia permit. The check also revealed that the defendant had an outstanding bench warrant issued by the District of Columbia Superior Court. Defendant was arrested, and placed into handcuffs. When the officer explained that the warrant was outstanding, the defendant replied that he had already taken care of it. The officer replied that they would look into it and take care of it when they got to the police station. While the defendant was being patted down incident to that arrest, officers recovered an empty holster and a pair of handcuffs from the defendant's waistband. The officer then asked the defendant who he worked for, and the defendant then told the officers that he owned a security company that did body guard work for hire, domestic violence cases, and fugitive recovery, as well as security for some of the clubs in town. The officer then asked whether the defendant had a license for the firearm, and the defendant replied with words to the effect of

---

[1] The bottom portion of the tag was missing, and had been replaced with a piece of cardboard that had handwritten letters and numbers on it.

"well no, not really." A search of the vehicle incident to arrest revealed a loaded Rossi .38 cal. revolver, wrapped in a towel and laying on the rear passenger floor board of the car underneath a leather folder with papers. The pistol was loaded with 5 rounds of Winchester ammunition, and it fit the holster found on the defendant's person. The search also revealed a box containing 42 Winchester .38 caliber bullets in the rear passenger door next to the revolver.

After waiving his Miranda rights, the defendant gave a statement to Detective Pendleton. The defendant stated that the gun the officers found was registered to his wife, and that he did not know it was in the car. He also stated that the holster was for a .357, and that he carried it when he was employed in his bodyguard business.

During the course of their investigation into the above-mentioned incident, it was learned that defendant had been in possession of a firearm on a previous occasion in the District of Columbia after having been convicted of a felony offense. Investigation revealed that on or about April of 2005, that the defendant had worn a Rossi .38 caliber revolver at the New Saint Paul Daycare, 2400 Franklin Street, NE Washington, DC, while picking up his son from the daycare. At that time, the defendant was told that not to come into a daycare with a gun in plain view. However, the defendant replied that he was a security guard and that the firearm was registered. There is no .38 caliber Rossi revolver registered to the defendant in the District of Columbia.

There are no firearm or ammunition manufacturers located within the District of Columbia. Therefore, the firearm seized from Mr. Muschette on June 19, 2005, which he wore at the New Saint Paul Daycare, 2400 Franklin Street, NE Washington, DC on or about April, 2005, a Rossi .38 cal. revolver, was manufactured outside the District of Columbia and was shipped, transported, or delivered through interstate or foreign commerce into the District of Columbia at some point prior to April, 2005.

At the time the defendant possessed the handgun on or about April and June 19, 2005, the defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year, and such crime does not involve the exceptions in 18 U.S.C. § 921(a)(20).[2] Specifically, on March 11, 2001, Mr. Muschette was found guilty of Unlawful Possession of a Firearm and Ammunition by a Convicted Felon, in violation of 18 U.S.C. 922 (g)(1) by the Honorable Alexander Williams in Federal District Court in Greenbelt, MD, case number 00-CR-446. In that case, he was sentenced

---

[2] In 18 U.S.C. § 921(a)(20), the statute defines a "crime punishable by imprisonment for a term exceeding one year" as excluding such business crimes as antitrust offenses, as well as offenses characterized by the state as misdemeanors that are punishable by imprisonment for two years or less. The predicate felony in this case does not trigger any of these exceptions.

by the Court to a term of imprisonment of 57 months, with three years supervised release. Defendant had also been convicted of Assault with a Dangerous Weapon, in the District of Columbia Superior Court, case number F-2664-88 on February 2, 1990. In that case, he was sentenced by the Court to a term of 3 to 9 years.

### DEFENDANT'S ACKNOWLEDGMENT

I have read this factual proffer and have discussed it with my attorney, Mary Petras, Esquire. I fully understand this factual proffer. I agree and acknowledge by my signature that this proffer of facts is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this factual proffer fully.

Date: 10-25-05

Robert Muschette

### ATTORNEY'S ACKNOWLEDGMENT

I have read this factual proffer, and have reviewed it with my client fully.

Date: 10-25-05

Mary Petras, Esquire
Attorney for Robert Muschette