UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Criminal No.: 05-264(ESH) |
| : | |
| ROBERT MUSCHETTE, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S SUBMISSION
IN SUPPORT OF SENTENCING HEARING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully requests that the Court consider a recording of two telephone messages that the defendant left for his estranged wife while he was in jail pending sentencing in this case. Since the submission is a compact disc recording, it will be delivered to chambers. The compact disc has already been provided to defense counsel and to the probation office. The government's position is that these messages constitute harassing contact with a government witness in part because of her participation in this case. Even if the conduct revealed in the communications may not actually rise to the level of obstruction of justice, the government's position is that the Court should certainly take the communications into consideration when sentencing the defendant in this case.

**STATEMENT OF FACTS**

On or about June 19, 2005, at approximately 4:51 p.m., members of the United States Capitol Police observed a black Lexus bearing a home made Maryland license tag, traveling south bound in the 900 block of South Capitol Street, SW. The vehicle was being driven by the defendant, Robert Muschette. When officers approached his vehicle and requested his license and registration, the defendant told them that he had left his license in his hotel, but that he had a Maryland

identification card. A check of law enforcement databases revealed that the defendant had no Maryland permit, and an expired District of Columbia permit. The check also revealed that the defendant had an outstanding felony bench warrant issued by the District of Columbia Superior Court. Defendant was arrested, and search incident to arrest revealed a loaded revolver, wrapped in a towel and laying on the rear passenger floor board of the car. The search also revealed a box containing 42 Winchester .38 caliber bullets in the rear passenger door next to the revolver. After waiving his Miranda rights, the defendant said, among other things, that the .38 handgun was registered to his wife, and that he did not know it was in the car.

During the course of their investigation into the above-mentioned incident, it was learned that defendant had been in possession of a firearm on a previous occasion in the District of Columbia after having been convicted of a felony offense. Investigation revealed that on or about April of 2005, that the defendant had worn a Rossi .38 caliber revolver at the New Saint Paul Daycare, 2400 Franklin Street, NE Washington, DC, while picking up his son from the daycare. At that time, the defendant was told not to come into a daycare with a gun in plain view. However, the defendant replied that he was a security guard and that the firearm was registered. There is no .38 caliber Rossi revolver registered to the defendant in the District of Columbia.

### THE CONDUCT IS HARRASSING CONDUCT DIRECTED TOWARD A GOVERNMENT WITNESS AS A RESULT OF HER PARTICIPATION IN THIS CASE

The Government notes that the defendant's estranged wife, Jennifer Muschette, is the owner of the handgun at issue in this case. Consequently, if the case had gone to trial, Mrs. Muschette may have been a potential government witness against the defendant. It is clear by the messages on the recording that the defendant holds Mrs. Muschette partly responsible for his current incarceration.

In the first recorded telephone message left on Mrs. Muschette's voice mail at her job, the defendant used foul language to tell Mrs. Muschette how he felt about her and her contact with his family. He then stated "For the shit that you helped orchestrate to facilitate where I am right now, man, fuck you. You done lost your fucking mind." "Why keep the last name, send divorce papers. Why do you want to be Muschette, when you got me locked up. You twisted, you got the game all fucked up." "Whether you do it now, or whether you do it when I get home, I'ma get mines back.–I'ma get all mines back (sic)." The defendant further complained about the way that papers have been served upon him by someone he believed to have been sent by Mrs. Muschette, stating that "The next personal friend you send to serve me papers, and that ain't his job description, "I'ma smack him, just like [I'd or I'll] smack you." The defendant ended the recorded message with "I ain't playing with you no more, stay the fuck away from my family."

   The second call on the compact disc also includes a recorded message left by the defendant on Mrs. Muschette's voice mail at her job. The defendant accomplished both of these calls by calling an intermediary, and asking that person to place the call to Mrs. Muschette by utilizing the three-way dialing telephone feature. This is significant because before agreeing to place the call, the intermediary is heard to warn the defendant to be mindful of his language during the message because the calls are recorded. The defendant then responded " I want her to come at me." The defendant began his second message with "I want nothing from you other than for you to roll over and die." He then complained about the fact that he felt Mrs. Muschette had made threats against his current girlfriend. The defendant then stated that for the next certain amount of months, due to the "beef" between he and Mrs. Muschette, he planned to "wait patiently for you. Because I'm going to get my turn, and I'm going to take it to another level. Now you take that how you want to

3

take it.". The defendant expressed his hatred for Mrs. Muschette, and ended the call with "[a]nd I will see you in the courtroom, and I will see you on the street, and I will show you just how much I hate you, and just how miserable I'm going to make your life. Sweet dreams, and I hope you have a nice day."

At first blush, these messages may seem to be only the ill-advised ramblings of a man who is having problems in his marital relationship. However, closer inspection reveals that these comments are much more. Mrs. Muschette's position as the owner of the weapon at issue is not insignificant–it clearly appears that the defendant got the gun from her at some point during their relationship. Morever, the conduct to which the defendant pled guilty–having a gun at a daycare center, arose when the defendant went to the daycare center to pick up the child that the two of them have in common. Consequently, Mr. Muschette undoubtedly feels that Mrs. Muschette is somehow involved as a witness to those facts as well. And lastly, it is clear that the defendant blames Mrs. Muschette for his incarceration–in the first message, he refers to her having "orchestrated" the situation, then he further states that "you got me locked up." In the second message, he refers to seeing her "in the courtroom." Consequently, despite the fact that he doesn't explicitly say that he will harm the witness as a result of her position as a witness, it is clear that he is aware of her position as a witness for the prosecution, and that this fact provides some of the impetus for the messages and the threatening language contained therein.

For these reasons and any other reasons to be stated at the hearing on this matter, the government requests that the Court consider the threatening nature of the messages the defendant has left for a potential government witness in fashioning an appropriate sentence in this case.

Respectfully submitted,

KENNETH L. WAINSTEIN.
UNITED STATES ATTORNEY

By: _____

 WANDA J. DIXON
Assistant United States Attorney
Organized Crime and Narcotics Trafficking Section
555 Fourth Street, N.W., Room 4122
Washington, D.C. 20530
202/514-6997